# EXHIBIT "D"

AGREEMENT
BETWEEN
LOCAL 2013 UFCW
AND
SOUTH ORANGE FANCY FOODS LLC

PAGE #

| | | |
|---|---|---|
| ARTICLE I – | RECOGNITION AND COVERAGE | 2 |
| ARTICLE II– | UNION SECURITY | 2 |
| ARTICLE III– | PROBATIONARY PERIOD | 4 |
| ARTICLE IV – | HOURS OF WORK AND OVERTIME | 4 |
| ARTICLE V – | NEW STORE LOCATIONS | 5 |
| ARTICLE VI – | HOLIDAYS | 5 |
| ARTICLE VII– | VACATION | 6 |
| ARTICLE VIII– | LAY-OFF & SENIORITY | 7 |
| ARTICLE IX – | WAGE INCREASES | 8 |
| ARTICLE X – | DEATH IN FAMILY | 9 |
| ARTICLE XI (A) – | WELFARE FUND | 9 |
| ARTICLE XI (B) – | ANNUITY FUND | 10 |
| ARTICLE XII – | EMPLOYER PAID LIFE INSURANCE | 10 |
| ARTICLE XIII– | EMPLOYEE REFERRAL BONUS | 10 |
| ARTICLE XIV – | EMPLOYEE DISCOUNT PROGRAM | 10 |
| ARTICLE XV – | CASH CASHING | 11 |
| ARTICLE XVI – | DISCHARGE | 11 |
| ARTICLE XVII – | NON-DISCRIMINATION | 12 |
| ARTICLE XVIII– | MODIFICATION OF AGREEMENT | 12 |
| ARTICLE XIX – | LEAVE OF ABSENCE | 12 |
| ARTICLE XX – | MILITARY SERVICE | 12 |
| ARTICLE XXI – | STRIKES OR LOCKOUTS | 12 |
| ARTICLE XXII – | GRIEVANCE PROCEDURE/ARBITRATION | 13 |
| ARTICLE XXIII – | UNION REPRESENTATIVE AND UNAUTHORIZED ACTIONS | 14 |
| ARTICLE XXIV – | REDUCTION OF WAGE RATES | 15 |
| ARTICLE XXV – | CHECK-OFF | 15 |
| ARTICLE XXVI – | STORE TRANSFERS | 16 |
| ARTICLE XXVII – | UNIFORMS | 16 |
| ARTICLE XXVIII – | EXAMINATION OF RECORDS | 16 |
| ARTICLE XXIX – | REST PERIODS AND WASH-UP PERIODS | 16 |
| ARTICLE XXX – | JURY DUTY | 16 |
| ARTICLE XXXI – | BULLETIN BOARDS | 16 |
| ARTICLE XXXII – | SAFETY PROVISIONS & PAY FOR TIME LOST | 16 |
| ARTICLE XXXIII – | SICK LEAVE | 17 |
| ARTICLE XXXIV – | MANAGEMENT | 17 |
| ARTICLE XXXV – | STEWARDS | 18 |
| ARTICLE XXXVI – | SAVINGS CLAUSE | 18 |
| ARTICLE XXXVII – | PARTIES IN INTERES | 19 |
| ARTICLE XXXVIII – | WAIVER | 19 |
| ARTICLE XXXIX – | SURVIVAL OF CONTRACT | 19 |
| ARTICLE XL – | EXPIRATION | 20 |
| ARTICLE XLI – | TERM OF AGREEMENT | 20 |
| SCHEDULE "A" – | STORE LOCATIONS | 21 |
| SCHEDULE "B" – | EMPLOYEES CLASSIFICATIONS | 22 |

THIS AGREEMENT made and entered into this 2nd day of August, 2016, by and between Local 2013 U.F.C.W. CLC, its successors and/or assigns (herein called the "Union") having its offices at 9235 4th Avenue, Brooklyn, New York 11209, and South Orange Fancy Foods LLC, d/b/a Eden Garden Café & Market Place/Ashley Market Place (herein called the "Employer") having its principal place of business at 1-7 South Orange Avenue, South Orange, NJ 07079, for its employees at South Orange Fancy Foods LLC, (as well as all future locations which the Employer owns, operates, leases, franchises or managers in the Tri-State Metropolitan Area (New York, New Jersey, Connecticut).)

## W I T N E S E T H:

**WHEREAS**, the Union has been recognized as the exclusive representative for the purposes of collective bargaining of all full time and regular part-time employees of the Employer; and

**WHEREAS**, the parties hereto have met and negotiated with respect to the terms and conditions of a Collective Bargaining Agreement,

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

### ARTICLE I - RECOGNITION AND COVERAGE

The Employer recognizes the Union as the sole and exclusive Collective Bargaining agent for, all its full time and regular part-time (as described in Appendix "B") employees, excluding managers, assistant managers, buyers, supervisors, office clericals, and part-time employees working less than twenty (20) hours per week as defined in the National Labor Relations Act.

### ARTICLE II - UNION SECURITY

Section 1.   It shall be a condition of employment that, (a) all present employees of the Employer covered by this Agreement; who are members of the Union in good standing on the effective date of this agreement, shall remain members in good standing and those who are not members on the effective date of this Agreement, shall, on the 90th calendar day following

2

the effective date of this Agreement, become and remain members in good standing in the Union; and (b) all employees covered by this Agreement and hired on or after its effective date shall on the 90th calendar day following the beginning of such employment, become and remain members in good standing in the Union.

Section 2.    **Part-time Employees:**   Employees shall be considered part-time employees if he/she works twenty (20) hours to thirty-seven and one-half (37 1/2) hours.

Part-time employees shall receive wage increases and a pro-rated share of holidays, vacation and sick leave.

Employees working more than thirty-seven and one-half (37 1/2) hours per week shall be considered full time employees.

Temporary employees working less than twenty (20) hours, shall not be included in the Union Contract. In addition, temporary employees shall be permitted to work more twenty (20) hours per week, for a period of up to ninety (90) days and not be included in the Union contract.  If any temporary employees works more than twenty (20) hours per week for a period exceeding ninety (90) days, said employees shall become Union members and received all conditions in the Union contract.

Section 3.    **Summer Help:**   The Employer shall have the right to hire summer help during the period of July 1st thru August 31st and shall not be included in the Union contract.

Section 4.    For the purposes of the Article, an employee shall be considered a member of the Union in good standing if he tenders periodic dues and initiation fees uniformly required as a condition of membership.  The Employer will remit these deductions to the Union.

Section 5.    If any employee shall fail to become a member of the Union at the required time, or shall fail to maintain his Union membership in good standing then upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the

same terms and conditions generally available to
other members, the Employer shall within one (1)
week after receipt of such written notice
discharge said employee.  The employee shall have
the opportunity, after notification from the
Union to the Employer in his default, to correct
said default by the tender of the required dues
or initiation fees.  The Union agrees to
indemnify and hold the Employer harmless against
any damage or expense incurred by reason of any
discharge effected at the request of the Union.
The Employer will remit all deductions of
periodic dues and initiation fees to the Union.

## ARTICLE III - PROBATIONARY PERIOD

All new employees and employees rehired after a break in service
shall be deemed to commence their employment on a temporary
probationary basis without seniority status and said probationary
period shall include the first ninety (90) calendar days of
employment.  Within the probationary period, the Employer may
discharge or otherwise discipline any such new or rehired
employees for any reason whatsoever and such action shall not be
subject to the grievance or arbitration provisions of this
Agreement.

## ARTICLE IV - HOURS OF WORK AND OVERTIME

1.  A week's work shall normally consist of forty (40) hours of
    work between the hours 7:00 a.m. to 10:00 p.m., divided by the
    Employer into five (5) days (Monday through Sunday inclusive)
    of eight (8) hours of work, to be scheduled by the Management,
    exclusive of an unpaid meal period of up to half (1/2) hour
    schedule depending on the department worked) as near to the
    middle of the working day or night as practicable.

2.  All hours worked in any week (including hours worked on
    Saturday & Sunday) in excess of forty (40) hours in one week
    shall be overtime and shall be paid at the rate of time and
    one-half.

3.  In the event that an employee works a shift that is partially
    in a regular work-day and partially in a holiday, work
    performed during the holiday portion of the shift shall be
    paid in accordance with the provision of Article VI.

4. The provisions of this Article shall in no way be construed as a guarantee by the Employer of any amount of work in any period or as a limitation on hours of work in any period.

5. It is understood and agreed that in no case shall premium pay of overtime rates be paid twice for the same hours of work. There will be no pyramiding or duplicating of overtime.

6. Employees are expected to work reasonable amounts of overtime when so requested. Employees who fail to work overtime when requested can be subject to progressive discipline.

## ARTICLE V - NEW STORE LOCATIONS

The Employer shall immediately notify the Union upon opening a new store in Tri-State Metropolitan Area (New York, New Jersey, Connecticut) and provide the Union with a list of names, addresses and telephone numbers of the employees of the new store.

The Employer agrees that it will not interfere with the Union Representative who is assigned to obtain authorization cards in the store, provided the Union Representative, does not interfere with or disrupt the operation of the Employer's new store.

The Employer agrees upon presentation of a majority representation by the Union that the Employer will recognize the Union as the Collective Bargaining agent for the employees of the new store and such employees shall be covered under the Collective Bargaining Agreement.

## ARTICLE VI - HOLIDAYS

1. The following days shall be observed for all non-probationary employees employed more than one hundred eighty (180) days as paid holidays:

New Year's Day                     *Two (2) Personal Days
Christmas Day                      Employees Birthday
Four(4)hours pay for Thanksgiving Day


*The Employee shall give forty-eight (48) hour notice to use a Personal Day. All unused Personal Days, shall be paid to the employee, at the end of each contract year. In time off of regular pay.

5

2. Should any of these aforementioned holidays fall within the one-hundred eighty (180) day probationary period, the employee will not receive pay for such holiday.

3. Holiday pay shall consist of eight (8) hours straight-time pay. An employee who works his scheduled hours on a holiday shall receive time and one-half his regular pay for the hours worked plus holiday pay.

4. In the case of employees working less than eight (8) hours reference to "8" hours in the paragraphs above shall read "his regular number of hours worked."

### ARTICLE VII - VACATION

1. Vacations with pay shall be granted in each calendar year to eligible full-time and part-time employees as follows:

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
|---|---|
| Computed from Date of Hire. | |
| One (1) year – Three (3) years | One (1) week |
| More than Three (3) years | |
| Less than five (5) years | Eight (8) days |
| More than Five (5) years | Ten (10) days |

For the purposes of computing vacation benefits, an employee's length of service shall be computed from his most recent date of hire.

1A. Employees must take their vacation between April and September of each year.

2. Vacation pay for each week of vacation shall be calculated by multiplying the employee's regular straight-time hourly rate of pay in effect during the payroll period immediately preceding his vacation period by forty (40). Vacation pay shall be paid on the pay day immediately preceding the vacation period of each employee.

3. In the case of employees working less than forty (40) hours, the reference to "40" hours in the paragraphs above shall read "his average regular number of hours worked." (We will use the average of the most recent last six (6) months of work.)

6

4. Employees are not permitted to carry their vacations over from one (1) year to the next. Any earned vacation remaining unused at the end of any calendar year shall be paid, or the Employer shall grant addition time-off for any unused vacation days.

5. The Employer at its sole options shall have the right to schedule vacation periods for the employees. All scheduled vacations shall be designated by the Employer at least four (4) weeks prior to the time it commences. Whenever the needs of the business permit, vacation periods shall be scheduled by taking into consideration the preferences and seniority of the employees.

6. When a paid holiday falls within a vacation period, the employee will receive an additional day's pay.

7. Employees laid-off, quitting shall be paid their unused vacation entitlement on pro-rated basis. In the event of the death of any employee covered by this Agreement, unused vacation entitlements will be paid but subject to the above guideline.

## ARTICLE VIII - LAY-OFF & SENIORITY

1. All employees continuously employed for a period exceeding one hundred eighty (180) calendar days and not categorized as probationary shall be entitled to seniority rights, as provided herein. For the purposes of determining seniority, the length of an employee's service shall be computed from the date of his hire or rehire. An employee shall retain his place on the seniority list for three (3) months after lay-off.

2. In all cases of lay-off and in all cases of recall, the following principle will govern: Departmental Seniority shall prevail providing the skill, ability and work record of the employees are relatively equal and the employee has the ability to do the work.

3. The Employer shall send to the Union a list of names of the employees laid-off promptly after the lay-off takes place.

4.    In the event of a reduction in the work force, all probationary employees shall first be laid-off. If a further reduction is required, employees shall be laid-off in accordance with the principle set forth in Section 2 of this Article. Whenever a reduction in the force is necessary, the Employer shall give one (1) day notice of such lay-off to the regular employees.

5.    The Employer will prepare and submit to the Union a seniority list based upon the length of service record for the employees.

6.    Any employee who has, or may quit or has been or may be discharged for cause, shall lose all previously accumulated seniority.

7.    Any employee who does not report for work within twenty-four (24) hours after date required to report from lay-off, shall forfeit employment and be removed permanently from the lay-off list as eligible for recall.

## ARTICLE IX - WAGE INCREASES

### Full-time employees:

Effective August 1, 2016, all employees shall receive a wage increase of fifty ($.50) cents per hour.

Effective August 1, 2017, all employees shall receive a wage increase of fifty ($.50) cents per hour.

Effective August 1, 2018, all employees shall receive a wage increase of fifty ($.50) cents per hour.

New full-time employees upon completion of the one hundred twenty (120) days of employment, shall receive a wage increase of twenty-five ($.25) cents per hour.

### Part-time employees:

Effective August 1, 2016, all employees shall receive a wage increase of fifty ($.50) cents per hour.

Effective August 1, 2017, all employees shall receive a wage increase of fifty ($.50) cents per hour.

Effective August 1, 2018, all employees shall receive a wage increase of fifty ($.50) cents per hour.

New part-time employees upon completion of the one hundred twenty (120) days of employment, shall receive a wage increase of twenty-five ($.25) cents per hour.

<u>MERIT RAISES:</u>

The Employer at its sole discretion may give merit raises to Union employees during the term of this Agreement.

<u>MINIMUM WAGE LANGUAGE</u>: In the event the minimum wage is increased during the term of the Agreement, the Union and the Employer agree to meet and negotiate wage inequities on behalf of those employees on the payroll prior to the new minimum implementation.

### ARTICLE X - <u>DEATH IN FAMILY</u>

Employees who have a death in their immediate family shall receive up to three (3) days of leave of absence with pay.   Immediate family shall mean, Spouse, Son, Daughter, Father, Mother, Brother or Sister.   Employees must produce a death certificate to prove such death and further proof, if requested, satisfactory to the Employer to receive this benefit.

### ARTICLE XI (A) - <u>WELFARE FUND</u>

Section 1. The Employer will pay to Local 2013 Health & Welfare Fund (Regular Plan), per month in advance for all full-time employees working thirty (30) hours or more after the new employee has completed his/her probationary period, any day during any month who select to participate by authorize payroll deduction of fifty (50%) percent of Single Plan contributions, to be used by Local 2013 Health & Welfare Fund as a Welfare Fund as follows:

| EFFECTIVE DATE | SINGLE COVERAGE |
|---|---|
| August 1, 2016 | $335.00 |
| August 1, 2017 | $352.00 |
| August 1, 2018 | $369.00 |

9

The Employer shall contribute the balance of fifty (50%) percent of Single Plan contributions for all employees who elect to participate by authorized payroll deduction for Single Plan Benefits.

In addition to Single Plan Benefits, employees may elect to participate in Family Dependent Coverage Benefits coverage by authorized payroll deductions as follows:

| EFFECTIVE DATE | EMPLOYEE CO-PAY FAMILY DEPENDENT BENEFIT |
|---|---|
| August 1, 2016 | $845.00 |
| August 1, 2017 | $887.00 |
| August 1, 2018 | $932.00 |

The Employer shall contribute fifty percent (50%) of the Single Rate toward the Family Dependent Benefit.

The Employer shall remit Employer contributions and employee co-pay deductions to the Local 2013 Health & Welfare Fund.

Section 2.   The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Welfare Fund.

### ARTICLE XI (B) – ANNUITY FUND

Section 1. The Employer will pay to Local 2013 Annuity Fund, per month in advance for all full-time employees working thirty-seven and one-half (37 ½) hours or more on the payroll and employed for more than three (3) years any day during any month, to be used by Local 2013 Annuity Fund as a Annuity Fund as follows:

| EFFECTIVE DATE | CONTRIBUTION |
|---|---|
| January 1, 2010 | $25.00 |

The Employer shall remit Employer contributions to the Local 2013 Annuity Fund.

10

Section 2.   The Employer shall pay all costs and reasonable legal fees incurred or to be incurred in ascertaining and collecting any delinquent payments due to the Annuity Fund.

## ARTICLE XII - EMPLOYEE PAID LIFE INSURANCE

The Employer shall continue to maintain Group Life Insurance as follows: $10,000.00 per employee.

## ARTICLE XIII - EMPLOYEE REFERRAL BONUS

The Employer shall give a fifty dollar ($50.00) bonus for any employee who recommends an employee for a job opening. The recommended employee must be hired by the Employer.

## ARTICLE XIV - EMPLOYEE DISCOUNT PROGRAM

The Employer shall grant a twenty (20%) percent discount to all non-probationary employees purchasing merchandise in any covered store.

## ARTICLE XV - CHECK CASHING

The Employer shall provide free check cashing of all payroll checks and at employees request, provide direct deposit.

## ARTICLE XVI - DISCHARGE

1.  The Employer shall have the right to discipline, up to and including discharge without warning, for just cause. "Just Cause" as used herein shall include, but not be restricted to, working while under the influence of narcotics or alcohol, sexual harassment, insubordination, dishonesty, falsification of records or reports required by the Employer, theft, assault, disorderly conduct, disrespectful to a customer, incompetence, committing or attempting to commit deliberate damage to the property of the Employer, disloyalty to the Employer by aiding a competitor in any manner whatsoever, disclosing information, after being instructed by the Employer of a confidential nature, failure to abide by plant rules and regulations and such other reason that would tend to disrupt the satisfactory  working conditions of the group, or the overall efficiency of the store. For the purpose of absenteeism, lateness or poor production, Employer shall give at least two (2) warning notices of the specific complaint against the affected employee in writing and copies to the Union and Shop Steward before any employee is suspended or

11

discharged warning notices shall remain part of an employee's record for a period of twelve (12) months.

2. Within forty-eight (48) hours of discharge, the Employer shall notify the Union, in writing, of the reason for the discharge.

3. Notice of protest of the discharge must be made to the Employer by the Union in writing within five (5) days from the date of notice of discharge.

4. If the Union and the Employer are unable to agree as to the settlement of the question, then it may be referred to arbitration, as herein before set forth in Article XVIII - within ten (10) days after the above notice of protest is given to the Employer by the Union.

### ARTICLE XVII - NON-DISCRIMINATION

The Employer and the Union agree that there shall be no discrimination in the matter of hours, wages or working conditions against an employee/member based on categories protected by Federal or State law.

### ARTICLE XVIII - MODIFICATION OF AGREEMENT

Neither the Employer nor any individual worker or group of workers will have the right to modify or waive any of the provisions of this Agreement. The Employer will not enter into any individual agreements or arrangements with any of its employees covered by this Agreement.

### ARTICLE XIX - LEAVE OF ABSENCE

Any employee desiring a leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for twelve (12) weeks. Written permission for extension must be secured from both the Union and the Employer. During the period of absence, the employee shall not engage in gainful employment in the same industry in classifications covered by this Agreement. Failure to comply with this provision shall result in the complete loss of seniority rights for the employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights.

### ARTICLE XX - MILITARY SERVICE

The Employer and the Union will comply with all applicable laws regarding military service including, but not limited to USERRA.

### ARTICLE XXI - STRIKES OR LOCKOUTS

1.  During the term of this Agreement, or any extension thereof, the Union agrees that there shall be no strike, slowdown, boycott, picketing or work stoppage for any cause whatsoever.  The Union, its officers and agents further agree that they will not encourage, condone, aid or support any such strikes, slowdowns, boycotts, work stoppages, picketing or any other violation of this section, directly or indirectly.

2.  The Employer agrees that it will not affect or engage in a lockout against employees covered hereunder during the term of this Agreement.

3.  Where an authorized work stoppage, slowdown, boycott or strike occurs, the Union will make immediate and substantial efforts to return its members to their respective jobs and shall immediately direct each of its members in writing to return to work and cease any further actions which may affect operations.  Nothing herein contained shall preclude the Employer from seeking injunctive relief in Federal or State courts immediately upon the threat or occurrence of any slowdown, work stoppage, strike or other violation of this section.

4.  Should any employee or group of employees fail to report to work after being notified by the Union to do so, or otherwise violate this section, the Employer shall have the right to summarily discharge or otherwise discipline the aforementioned employee or group of employees without recourse to the grievance-arbitration procedure.

### ARTICLE XXII - GRIEVANCE PROCEDURE/ARBITRATION

A. Disputes or grievances arising between the parties involving questions of interpretation or application on any provisions of this Agreement, except where specifically precluded shall be presented not later than seven (7) days after the occurrence of the alleged grievance, by the party claiming to be aggrieved, to the other party and an earnest effort shall

be made promptly to adjust such matters in accordance with the following procedure.

In the first instance the alleged dispute or grievance shall be taken up between the Shop Steward and/or Business Representative of the Union and a designated Company representative, and if not thus settled within seven (7) days after it is first submitted, it shall be taken up between the Chief Officer of the Union or his designee and a designated Company Official, and if not thus settled within ten (10) days after the institution of this second step, it may be submitted to arbitration by the Union (which shall have the exclusive right to institute same and no person, employee or other shall have the right to institute or prosecute any action or proceeding thereunder), or the Employer within, but not later than thirty (30) days after this conclusion of the third step, to an Arbitrator mutually agreed upon for determination. The parties may extend the time limitations herein. All references to days in this Article are calendar days.

B.   In the event the Employer and the Union are unable to agree on the choice of an Arbitrator, he shall be selected in accordance with the rules of the New York State Employment Relations Board. The decision of such Arbitrator shall be final and binding on both parties and may be enforced by the appropriate proceeding in a court of competent jurisdiction. No Arbitrator however, may alter, amend, add to or detract from any of the provisions of this agreement. Fees of the Arbitrator shall be shared equally by the parties (Employer and Union).

**ARTICLE XXIII – UNION REPRESENTATIVE AND UNAUTHORIZED ACTIONS**

1.   No Union member or representative other than a duly authorized officer, official or business representative of the Union may instruct employees in the proper method of compliance with, or shall interpret for such employees, the terms of this Agreement.

2.   During the term of this Agreement and any successor agreements, employees of the Employer shall have no authority to cause or engage in any strike action or any other action which shall interrupt an Employer's business and no employee, group of employees or Shop Steward is authorized to cause or engage in such action.

3. The Employer recognizes these limitations and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose discipline up to and including discharge, without recourse to the grievance arbitration provisions of this Agreement, in the event any employee has taken unauthorized strike action or employed a slowdown or work stoppage or other interruption of the Employer's business in violation of this Agreement.

4. A duly authorized officer or business representative of the Union shall be permitted to enter the premises of the Employer during all working hours for the purpose of adjusting complaints or ascertaining whether safety standards are maintained or whether the terms and conditions of the Agreement are being observed. The Union representative, shall, when possible, give prior notice to the Employer of any visit to the plant, and upon arrival, shall present himself at the plant. Such representative may interview employees in the plant office and have reasonable access to the plant with the understanding that this privilege will not be abused and such visits will not interfere with production.

## ARTICLE XXIV - REDUCTION OF WAGE RATES

Nothing in any provision of this Agreement shall be so construed, anything to the contrary notwithstanding, as to effect a reduction in the wage rate of any worker or to increase the number of hours per week which the worker shall be compelled to work in order to earn his present weekly wage.

## ARTICLE XXV - CHECK-OFF

1. The Employer shall deduct from the first payroll in each month for each employee covered by this Agreement who is a member of the Union the monthly Union dues and forward such deductions by mail to the office of the Union, and identify with such deductions the names of the employees, provided that the Employer has received from each employee on whose account such deductions were made, a prior written authorization which shall not be irrevocable for a period of more than one (1) year or beyond the termination date of this Agreement, whichever occurs sooner. The phrase, Union dues, shall include initiation fees and regular dues uniformly provided for by written rule, by-laws or constitution of the Union.

15

It shall be a violation of this Agreement to make such deductions and payment on behalf of any employee not actually employed by this Employer.

2. The Union agrees that it will file with the Employer written and signed authorizations from each affected employee for such deductions prior to the time such deductions are made and it will indemnify and hold the Employer harmless for any action growing out of these deductions.   The Employer shall remit these deductions to the Union.

### ARTICLE XXVI - STORE TRANSFERS

Employees transferred from one store to another store shall retain their seniority from their original date of hire.

### ARTICLE XXVII - UNIFORMS

The Employer shall supply and launder a daily uniform for all non-probationary employees.   Employees who lose or damage their uniform shall be charged the cost of said uniform.

### ARTICLE XXVIII - EXAMINATION OF RECORDS

The Union shall have the right during reasonable business hours to examine the payroll records of the Employer to determine the wages and hours worked of employees.

### ARTICLE XXIX - REST PERIODS AND WASH-UP PERIODS

Each employee shall be allowed one ten (10) minute rest period per working day to be scheduled by the Employer.

### ARTICLE XXX - JURY DUTY

Employees who are required to serve on a jury shall receive the difference in wages up to a maximum of three (3) days, which he or she may receive for service on the jury. Proof of service required.

### ARTICLE XXXI - BULLETIN BOARDS

The Employer shall provide space upon request for a bulletin board in a reasonable accessible place for Union notices.   Such notices shall be business-like in tone and content and shall not be defamatory.

16

## ARTICLE XXXII - SAFETY PROVISIONS & PAY FOR TIME LOST

The Employer will make reasonable provisions for the safety and health of its employees, and shall comply with all Federal, State and Municipal requirements for safeguards and cleanliness. Should a worker be injured at the plant, he shall be paid for his entire day.  Should he lose time during the day thereafter for treatment for injuries suffered while employed, he shall be paid for time lost that day.

## ARTICLE XXXIII - SICK LEAVE

All employees employed one (1) year or more shall receive three (3) paid sick days beginning their 2nd year of employment and thereafter each anniversary year of employment.  All unused sick leave shall be paid to the employee, at regular pay or time-off by the end of each anniversary year.

## ARTICLE XXXIV - MANAGEMENT

1.  Subject to the express provisions of this Agreement, including Article XIX, the Grievance Procedure and Arbitration Clause, the management of each store and the direction of the working force, and the right to hire, modify the work force, suspend, transfer, lay-off because of lack of work, promote, demote, maintain discipline and maintain efficiency.

2.  The Employer shall have the right to determine the size and composition of its work force, to introduce new and improved methods, facilities and equipment, to fix non-arbitrary standards of quantity and quality of work done, to determine schedules and type of work, and to require adherence to safety rules.  The Union shall impose no restriction on the use of materials, tools, appliances or servicing or training methods.

3.  The Union recognizes the Employer's right to maintain discipline of employees including the right to make and enforce reasonable rules and regulations not inconsistent with the terms of this Agreement for the purposes of efficiency, safe practices and discipline.

4.  Without restricting in any way the types of work done by supervisors or other non-bargaining unit employees in situations under which work of the same type as that performed by the employees in the bargaining unit was performed prior to this Agreement, supervisors and other

17

non-bargaining unit employees shall be permitted to perform work of the same type as that performed by employees covered by this Agreement to the extent such work was so performed in the past and so long as it does not result in the lay-off of any bargaining unit employees.

5. The enumeration of the right of management as above described shall in no way constitute a waiver or abandonment of any other rights that are unusual and customary for management.

## ARTICLE XXXV - STEWARDS

1. The Union shall designated one (1) employee as Shop Steward for each store. For the sole purpose of applying the lay-off and recall provisions of this Agreement, the Shop Steward shall have top seniority in the store.

2. The Shop Steward shall be allowed reasonable time for the investigation and adjustment of grievances during working hours. It is understood, however, that this privilege shall not be abused and that the Shop Steward shall not be permitted to interfere with the duties of the employees and the operation of the plant.

## ARTICLE XXXVI - SAVINGS CLAUSE

Should any part of this Agreement or any portion therein contained be rendered or declared illegal, legally invalid or unenforceable by a Court of competent jurisdiction, or by the decision of any authorized governmental agency, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof. In the event of such occurrence, the parties agree to meet immediately, and if possible, to negotiate substitute provisions for such parts or portions rendered or declared illegal or invalid.

Should the parties be unable to agree on substitute provisions, the matter shall be referred to arbitration as hereinabove provided. The remaining parts and provisions of this Agreement shall remain in full force and effect.

## ARTICLE XXXVII - PARTIES IN INTEREST

This Agreement is between the Union and the Employer exclusively. It shall not vest or create in any employee or any group of employees covered thereby any rights or remedies which they or any of them can enforce either by law, equity or otherwise.   All rights and privileges created or implied by this Agreement shall be enforceable only between the parties hereto.   Any modification of this Agreement must be in writing duly executed by the Employer and the Union.

## ARTICLE XXXVIII - WAIVER

The Employer and the Union acknowledge that during the negotiations which resulted in this Agreement each has the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining and that all such subjects have been discussed and negotiated upon and the agreements contained in his contract were arrived at after the free exercise of such rights and opportunities.   Therefore, the Employer and Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the rights, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter whether or not specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or the contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

## ARTICLE XXXIX - SURVIVAL OF CONTRACT

This Agreement shall be binding upon the respective parties hereto and their assigns, and shall survive change of name, or location or place of business or re-organization.   In the event the Employer should sell, assign, transfer or otherwise dispose of this business, he agrees to notify the Union in writing at least thirty (30) days prior to said transfer or assignment.

## ARTICLE XL - EXPIRATION

This Agreement shall expire midnight on the 1st day of August, 2019.   It shall be automatically renewed from year to year thereafter, unless modified or terminated by either party giving to the other party not less than sixty (60) days written notice, by registered mail, prior to the next termination date, of its desire to modify or terminate this Agreement.   Should said sixty (60) days' notice be given, joint conferences between the parties

shall commence at least thirty (30) days before the termination date, for negotiation purposes.

## ARTICLE XLI - TERM OF AGREEMENT

This Agreement shall be a thirty-six (36) month agreement and shall go into force and effect on August 2, 2016 and shall continue in effect until midnight August 1, 2019.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by duly authorized officers and have hereunto set their hands and seals the day and year first above written.


SOUTH ORANGE
FANCY FOODS LLC                         LOCAL 2013 UFCW

BY: _____            BY: _____


_____ Cheon M. Kim _____               _____ 7/28/16 _____
PRINT NAME

WITNESSES:

_____

_____

DATED: __7.28 2016__

/ South Orange
  South Orange N.J.


20

**SCHEDULE "A"**

**STORE LOCATIONS**

1-7 SOUTH ORANGE AVENUE, SOUTH ORANGE, NJ   07079

## SCHEDULE "B"

### EMPLOYEES CLASSIFICATIONS

SOUTH ORANGE FANCY FOODS LLC
1-7 SOUTH ORANGE AVENUE
SOUTH ORANGE, NJ 07079

Please be advised that the bargaining unit employees ("Employees") of your company ("Company")  have been accepted for with Local 2013 Health & Welfare Fund (Regular Plan), effective August 1, 2013.

Local 2013 Health & Welfare Fund ("Regular Plan") agrees that the benefits to be provided will include the following:

Prescription, Hospitalization, Medical, Dental, Optical, Life Insurance, and participation in a P.P.O. provider network.

The above are a summary of benefits.  For more information of benefits provided by the Fund, consult the Summary Plan Description (Medical Booklet).

Please be advised that the pre-existing portion of the Fund's benefit plan has been waived for all employees employed before August 1, 2013, at this location ("Sign on Group" ).

Pre-existing conditions and dependent coverage shall be in accordance with the Fund's Summary Plan Description.  Please be aware that once a member, spouse or dependent is enrolled for coverage they are subject to all waiting periods and pre-existing clause.

All employees hired on or after August 1, 2013, shall be required to pay a one-time seventy-five ($75.00) dollar Initiation Fee to the Local 2013 UFCW.

SOUTH ORANGE
FANCY FOODS LLC                           LOCAL 2013  U.F.C.W.

BY: _____          BY: _____

DATED: __7.2%. 2016__          DATED: __7/28/16__

23